# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

THE STATE OF DELAWARE,     )
             Plaintiff,   )
     *ex. rel.*           )
                       )
WILLIAM SEAN FRENCH,    ) C.A. No. N13C-06-289 PRW CCLD
        Plaintiff-Relator, )
     v.                )
                       )
OVERSTOCK.COM, INC.,    )
          Defendant.   )

Submitted: October 4, 2019
Decided:  October 23, 2019

## ORDER OF FINAL JUDGMENT INCLUDING DAMAGES, PENALTIES AND ATTORNEYS' FEES

Upon further consideration of the Motion for Statutory Attorneys' Fees and Expenses (D.I. 1036) filed by the State of Delaware and Plaintiff-Relator William Sean French ("Plaintiffs"); the Memorandum in Response thereto filed by Overstock.Com, Inc. (D.I. 1041); Plaintiffs' Reply Brief (D.I. 1046); the oral arguments presented by the parties on September 30, 2019; the parties' supplemental and related submissions (D.I. 1050-51; D.I. 991); the Court's interim Order for Entry of Final Judgment on Damages and Penalties (D.I. 1028); and the complete record of this proceeding, it appears to the Court that:

(1)    After a six-day trial, a jury found Overstock to have knowingly violated the Delaware False Claims and Reporting Act ("DFCRA") by failing to report and remit dormant gift card balances to the State of Delaware. Based on the jury's

-1-

verdict and post-trial motions, the Court on June 28, 2019, entered final judgment on penalties and damages in the amount of $7,288,412.94, while retaining jurisdiction to determine attorneys' fees and costs using the lodestar approach.[1]

(2)   The lodestar method begins with the product of attorney-hours reasonably worked and their reasonable hourly fee[2] to obtain a lodestar[3] which is strongly presumed to be the correct sum.[4]

### *Only a Portion of Expenses are Attributable to Overstock and Recoverable*

(3)   This suit was originally lodged against 91 named defendant entities including dozens of retailers and scores of gift card servicing entities.[5]  The case unveiled a scheme by which retailers like Overstock contracted with non-Delaware shell entities to pay the shells a small fee to pretend to "hold" the value of unused store gift cards or their residua through an ostensible assignment of the debt.[6]  The

---

[1]   *See State ex rel. French v. Overstock.com, Inc.*, 2019 WL 2714835, at *6 (Del. Super. Ct. June 28, 2019) ("*Card Compliant V*") (may also be referred to hereinafter as "Interim Final Judgment Order").

[2]   *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1253 (Del. 2012).

[3]   Literally, "a guiding star," as in navigation.  BLACK'S LAW DICTIONARY 1026 (9th ed. 2009).

[4]   *Purdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010).

[5]   *See State ex rel. French v. Card Compliant LLC, et. al.*, 2015 WL 11051006, at *3 (Del. Super. Ct. Nov. 23, 2015) ("*Card Compliant I*").

[6]   *Card Compliant I*, at *1-3; *State ex rel. French v. Card Compliant, LLC*, 2018 WL 4183714, at *1-2 (Del. Super. Ct. Apr. 30, 2018) ("*Card Compliant III*").

scheme's purpose was the intentional and fraudulent evasion of Delaware's abandoned property laws, so the retailers could retain, as profit, funds they were obligated to report and transfer to the Delaware State Escheator.[7]

(4) Because Plaintiffs alleged the same scheme involving all retail defendants, much of the pre-trial work investigating *each* aspect of the scheme was useful against *every* defendant. Had the other defendants been removed from the case without recovery to Plaintiffs,[8] such multi-use work might then be recoverable entirely against Overstock as though the other defendants had never been involved.[9]

(5) But since most of the dismissed co-defendants were removed via settlement through which Plaintiffs recovered some attorneys' fees,[10] the Court may—in determining the reasonableness of such—adjust an otherwise allowable fee award to prevent double-recovery.[11] The Court in its instructions to the parties specifically sought out distinction between work against Overstock and against other

---

[7] *See Card Compliant V*, at \*4; *Card Compliant III*, at \*1-2; *Card Compliant I*, at \*1-3.

[8] Such as for lack of personal jurisdiction over a particular defendant, or summary judgment in that defendant's favor.

[9] *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) (plaintiffs prevailing on a claim with fees may recover those fees even if that work was also used for a related, but unsuccessful, claim).

[10] Aff. of Herbert, at ¶ 6 (D.I. 1036).

[11] *See Day & Zimmerman Sec. v. Simmons*, 965 A.2d 652, 660 (Del. 2008); *see also* DEL. CODE. ANN. tit. 6, § 1205(a) (2009) (permitting the Court to exclude fees and costs that are "repetitious" or that cause undue burden on the defendant).

defendants in order to permit a just apportionment.[12]

(6)    Plaintiffs submitted with their fees motion an affidavit from counsel breaking down the attorneys' fees and expenses incurred at each step in the case, and what proportion of the overall case Overstock as a defendant represented.[13]  This breakdown attributes a share rising from 3.2% to 8.3% of fees and expenses to Overstock through July 3, 2018, but 100% of fees and expenses thereafter.[14]  That date is when all other defendants ceased to oppose the case and entered into settlement negotiations.[15]

(7)    Overstock suggests replacing Plaintiffs' enumeration with a simple *pro rata* attribution of fees at every step of the case.[16]  All of the original defendants were entities.[17]  Dozens of these entities were shells, dozens of separate corporate forms with the same address, "the same operation in all but name," and names that were endless repetitions with a mere succession of roman numerals.[18]  Overstock's

---

[12]    *Card Compliant V*, at *6.

[13]    Aff. of Herbert, at ¶ 13.

[14]    *Id.*

[15]    *Id.*

[16]    *Id.* at ¶ 10.

[17]    Compl. ¶¶ 13-51.

[18]    Compl. ¶ 15 (D.I. 1).

own enumeration here adds in more than a dozen of these numbered (but truly empty) corporate shells with the goal of seeking dilution of Overstock's attribution. Such dilution would perversely reward the fraud for its overall complexity and misuse of the corporate form as an instrument of that fraud.

(8) In light of the record, the Court finds Plaintiffs' single-digit percentage allocation of fees a reasonable reckoning of Overstock's responsibility in the case over time. Plaintiffs' own reckoning of Overstock's importance and its similarity to other defendants in this enormous case is persuasive precisely because Plaintiffs' structure of understanding and developing the case corresponds to the work actually performed.

(9) Overstock additionally argues that, irrespective of the other defendants' agreement to settle as of July 4, 2018, the agreement to dismiss the other defendants was not docketed until August 13, 2018.[19] As Overstock describes it, until that time *"thirty defendants* remained in the case."[20] Because of this, Overstock suggests that the single-digit percentage attribution date be extended beyond July 3, 2018.

(10) Though those entities remained on the case, trial preparation could have been suspended and costs consequently avoided but for Overstock's insistent refusal

---

[19] Def. Resp. Memo., at 2 (D.I. 1041).

[20] *Id.* at 2-3 (emphasis in the original).

to settle. Until August 13, 2018, the possibility of negotiations breaking down and other retailers resuming hostile litigation did exist; the consequent need to reapportion responsibility for fees between them then might also exist. But that remote potentiality never materialized, so no such reapportionment is necessary. The "costs of a civil action" that Plaintiffs incurred in trial preparation from July 4, 2018, to August 13, 2018, therefore, reasonably fall on Overstock alone.

(11) Lastly, Overstock urges the Court to consider Overstock just one of several defendants until at least October 3, 2018, because Plaintiffs continued to spend time negotiating, reviewing, or discussing those other settlements.[21] Overstock points to several line items in Plaintiffs' submissions where counsel invoiced for matters that included settlement issues.[22] These include, for example, an attorney on August 20, 2018, billing for 7.3 hours for:

> Correspondence with Mr. Black, Brown, and Ms. Thomas re: [redacted]; correspondence with [other defendants'] counsel re: settlement agreements; correspondence with Mr. French re: [redacted]; revise [other defendants] settlement agreements to incorporate additional language; meet and confer with Overstock, Ms. Thomas, Messrs. Brown and Black, review and revise Juror Questionnaire, add objections to exhibit list, review and revise jury questionnaire; correspondence with Overstock's counsel re: Juror Questionnaire and Jury Instructions; correspondence with Mr. French re: [redacted]; continue

---

[21]     Def. Supp. Ltr., at 2 (D.I. 1051).

[22]     *Id.* Ex. A.

drafting [redacted].[23]

(12) Occasional review of settlements with other defendants can be construed as relevant to Overstock, since the terms to which one defendant agrees may involve their cooperation in pursuing a plaintiff's claims against the remaining ones. Even if such a term of cooperation is not finally adopted, some transient time seeking to obtain cooperation from one defendant against another is not unreasonable.

(13) The invoice list nevertheless does reflect more time periods spent at least in part on the settlements than such reasonable transient involvement. The Court accordingly finds that the appropriate percentage of fees reasonably attributable to Overstock after July 3, 2018 is 95%. Because "trial" expenses like expert witness preparation are rarely ever related in any way to concurrent settlement negotiations with other co-defendants, the Court still finds Overstock responsible for 100% of those attorney fees in that pre-trial period.

### The Timekeeping is Reasonable

(14) Overstock argues that the total time spent by Plaintiffs' attorneys is necessarily unreasonable because it totals more than 13,000 lawyer and paralegal hours.[24] Overstock alleges that, since Plaintiffs' case-in-chief was presented in

---

[23]     *Id.* Ex. A., at 7.

[24]     Def. Resp. Memo, at 11.

twelve hours, it cannot be the case that the total time spent by timekeepers is that high.[25]

(15)  Far from raising a presumption of unreasonableness, the hours that Plaintiffs' timekeepers reflect is entirely consistent with the complexity, duration, number of parties, extended motion practice, and sums involved in this case. More than eighty-five percent of those hours were incurred when Overstock was only one of dozens of defendants involved in this complex scheme to systematically defraud the public out of millions of dollars in the accumulated abandoned gift card remnants, and Plaintiffs only ask for Overstock to pay a small and commensurate fraction of those fees.

(16)  The long timekeeping does not surprise the Court in light of the intense litigation in which all parties, including Overstock, engaged. The volume of motion practice in this case can be seen by even a cursory look at the docket—that contains more than a thousand entries. And that enumeration doesn't even capture the federal district court proceedings that occurred between removal by the defendants[26] and remand for lack of subject matter jurisdiction.[27]

---

[25]  *Id.*

[26]  *See* Notice of Filing of Removal (D.I. 57).

[27]  *Delaware ex rel. French v. Card Compliant, LLC*, 2014 WL 12769809, at *2 (D. Del. Dec. 10, 2014).

(17)   Overstock submits little of substance to dispute the accuracy of Plaintiffs' invoices, nor does it cite persuasive precedential authority at this stage. At its core, instead, Overstock's fee challenge relies on simple incredulity.[28]

### *The Plaintiffs' Counsels' Hourly Rates Should Be Adjusted*

(18)   The lodestar calculation looks to the prevailing market rates in the relevant legal community.[29]

(19)   Plaintiffs propose billing rates ranging between $200 and $260 per hour for paralegals, $395 to $660 per hour for attorneys, and $800-$1,100 per hour for partners and of-counsel attorneys.[30]  In support of these proposed rates, Plaintiffs submitted for comparison peer Delaware firms' fee petitions filed in other like Delaware litigation.[31]

(20)   Plaintiffs' exhibits demonstrate that their proposed billing rates can and

---

[28]    No doubt, this has been long and hard-fought litigation.  No doubt, Overstock is most unhappy with the result and the prospect of paying a seven-figure fee-and-expense award to the victors' counsel.  But that is no excuse for pugnacity in filings that is unnecessarily accusive of that counsel and their ethics. *E.g.*, Def. Reply Mem. at 11 (calling opposing counsels' timekeeping "Objectionable on its Face" and "jaw-dropping,"; declaring "It is apparent that this claimed timekeeper effort is inflated.").  "'The Delaware Way' holds lawyers to high[er] standards of professional courtesy and civility"—even in the heat of verbal and written battle. *See Halpern Family Property Inv. LP v. Anderson*, 2010 WL 8250831, at *3 (Del. Super. Ct. Dec. 22, 2010).

[29]    *Perdue*, 559 U.S. at 551.

[30]    *See* Plfs. Reply Br., at 7-8 (D.I. 1046).

[31]    *See general* Plfs. Reply Br. Ex. D-J (Plaintiffs' examples of other attorney fee petition affidavits in commensurate cases).

should be adjusted to prevailing market rates in the relevant legal community. For example, Plaintiffs submitted an affidavit of fees from a comparable Delaware firm well- and similarly equipped to conduct sophisticated and complex litigation such as this. In that comparable litigation, the firm's director cited his own rate as $750-$775 per hour, and billed associates at $260-$510 per hour.[32] This disparity remains even examining only other firms whose affidavits make explicitly clear that representation was fee-contingent.[33]

(21) Based on these comparisons and all salient factors extant here,[34] the Court finds that reasonable hourly billing rates for Plaintiffs' timekeepers are 80% of the values Plaintiffs propose.[35] Accounting for the above-explained 95% attribution to Overstock for fees after July 3, 2018, the Court thus finds that reasonable attorneys' fees attributable to Overstock are $1,249,830.01.

---

[32]    Plf. Reply Br. ex. J, at ¶ 2.

[33]    *Id.* Ex. E, G.

[34]    *See Card Compliant V*, at *6 n.38 (explaining lodestar approach); *Immedient Corp. v. Health Trio, Inc.*, 2007 WL 656901, at *3 (Del. Super. Ct. Mar. 5, 2007) (quoting *PLCM Group, Inc., v. Drexler*, 997 P.2d 511, 519 (Cal. 2000)) (explaining specific factors considered when adjusting lodestar figure such as: nature of the litigation; its difficulty; the amount involved; the skill required in its handling; the skill employed; the attention given; the success or failure; and, other circumstances in the case.).

[35]    *Perdue*, 559 U.S. at 550 (Observing as a matter of primacy to statutory fee-shifting that "[a] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious" public interest case.).

## The Claimed Expenses Attributed to Overstock Also Must Be Adjusted

(22) Plaintiffs allege that $17,681.02 of the expenses incurred on and before July 3, 2018, are attributable to Overstock based on its small percentage of the case. The Court finds this value reasonable.

(23) But Plaintiffs' claimed expenses thereafter, where Overstock was the sole defendant, are inordinately high.[36] Plaintiffs explain this by arguing that they incurred expenses of $66,146.25 related to a December 2017 expert report and $13,972.50 due to a March 2018 expert deposition which were only eventually used against Overstock at trial.[37] Plaintiffs obtained the report and deposition while multiple defendants were still involved. Those activities necessarily influenced the other defendants' decisions to settle rather than proceed to trial and that use can't be dismissed as merely coincidental. The Court finds those specific expenses properly attributable to the prior period, when Overstock was properly responsible for only 8.3% of expenses, or $6,649.86.

(24) Plaintiffs claim $80,316.63 incurred preparing their expert for trial, and in paying for his trial expenses.[38] Expert fees for the trial itself are limited to time necessarily spent in attendance at court, including testifying, waiting to testify, and

---

[36]   Aff. of Herbert, at ¶ 13.

[37]   Plf. Supp. Ltr., at 1-2 (D.I. 1050).

[38]   *Id.* at 2.

-11-

reasonable travel expenses.[39] While the itemized reports include significant amounts of time in trial preparation with the witness,[40] this time is not compensable.[41]

(25) This Court in 2003 found $2,000 to be a reasonable expert fee for a medical doctor for five hours of travel and testimony.[42] The expert here is an accountant and partner at a Philadelphia firm; generously, his round-trip travel is about three hours. Based on the length of travel and testimony, on inflation since 2003, and on the expert's skill and credentials, the Court finds $550 per hour for eight hours to be a reasonable expense for his participation as a witness, totaling $4,400.

(26) Plaintiffs cite $143,984.61 related to "jury selection and trial strategy consulting" with a New York-based consulting firm.[43] Such expenses incurred by counsel voluntarily (and some may say gratuitously) for orientation, consulting, or

---

[39] *Smith v. Greif*, 2015 WL 1598084, at *2-3 (Del. Super. Ct. Apr. 10, 2015); *Spencer v. Wal-Mart Stores East, LP*, 2007 WL 4577579, *1 (Del. Super. Ct. Dec. 5, 2007).

[40] Aff. of Herbert, Ex. A at 367-69.

[41] *Smith*, 2015 WL 1598084, at *2; *Rosenberg v. Crichton*, 2011 WL 5316771, at *2 (Del. Super. Ct. Sept. 23, 2011) (In this Court, expert's "time spent in preparation for court is not recoverable.").

[42] *Patterson v. Coffin*, 2003 WL 22853657, *6 (Del. Super. Ct. Oct. 31, 2003). Inflation applied in the sixteen years since renders $400 per hour in October 2003 the equivalent of approximately $550 per hour at present.

[43] *Id.* at 2.

advising a party pre- or during trial are not reasonably recoverable[44] against the vanquished party.[45]

(27) From all these claimed expenses, Plaintiffs can reasonably attribute to and recover from Overstock the sum of $28,730.88.

---

[44] *See Smith*, 2015 WL 1598084, at *2; *Spencer*, 2007 WL 4577579 at *1 ("Fees for 'orientation' or consulting or advising a party during trial are not recoverable, nor are any activities in preparation for trial."); *see also* DEL. CODE. ANN. tit. 6, § 1205(a) (2009) (the Court may exclude costs it finds unnecessary).

[45] The claim for this particular expense also brings to mind this Court's oft-made observation: "Sometimes it is important to win with grace." *Moore v. Garcia*, 1995 WL 945553, at *1 (Del. Super. Ct. July 10, 1995). *See also Sartin v. Pinkowski*, 1998 WL 35483217, at *1 (Del. Super. Ct. Oct. 28, 1998); *Mosley v. Milner*, 1999 WL 463550, at *1 (Del. Super. Ct. April 8, 1999); *Nelson v. Feldman*, 2011 WL 531946, at *2 (Del. Super. Ct. Jan. 26, 2011) ("On occasion, the Court has concluded that 'it is right, and just and fair' for the [victor] to bear the cost burden of the successful [case]."); *Sammons v. Kang*, 2013 WL 4492779, at *2 (Del. Super. Ct. Aug. 2, 2013).

## *Conclusion*

(28)   The Court, having considered each party's recent submissions on fees and costs in addition to all other matters disposed of in its Interim Final Judgment Order, **HEREBY ORDERS** that Judgment is now entered in favor of Plaintiffs and against Overstock as follows:

(a)   Civil penalties of $5,500.00 per violation for years 2010, 2011, 2012, and 2013, for a total penalty award of $22,000.00; and

(b)   Treble damages in the amount of $7,266,412.94; and

(c)   Attorneys' fees of $1,249,830.01 and expenses of $28,730.88 for a total amount of $1,278,568.89.[46]

Post-judgment interest shall accrue at the statutory rate from the date of this Order of Final Judgment and until the Judgment is paid in full.

**IT IS SO ORDERED this 23rd day of October, 2019.**

Paul R. Wallace, Judge

Original to Prothonotary

cc:  Counsel via File and Serve

---

[46]   *See* DEL. CODE. ANN. tit. 6, § 1205(a) (2009) (setting forth the statutory standard for final determination of such awards: ". . . whether such fees and costs were necessary to the prosecution of the action, were incurred for activities which were duplicative of the activities of the Department of Justice in prosecuting the case, or were repetitious, irrelevant or for purposes of harassment, or caused the defendant undue burden or unnecessary expense.").